# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JOSHUA NICHOLSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:19cv585 |
| | ) |
| JULIE ZIMMERMAN, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on the "Motion to Appoint Whitaker Rose Guardian Ad Litem for Plaintiff Joshua Nicholson" (Docket Entry 29) (the "Motion"). For the reasons that follow, the Court will deny the Motion.

## BACKGROUND

In June 2019, Joshua Nicholson (the "Plaintiff") initiated a lawsuit for alleged violations of his constitutional and statutory rights during his incarceration with the North Carolina Department of Public Safety (the "NCDPS") in the summer of 2016. (See generally Docket Entry 1 (the "Complaint"); see also Docket Entry 23 (the "Amended Complaint").)[1] Three months later, Plaintiff's attorney, F. William DeVore, IV (the "Plaintiff's Counsel"), filed the Motion "pursuant to Rule 17 of the Federal Rules of Civil Procedure" (the "Rules"), seeking an order appointing "Whitaker Rose [(at times, "Rose")] to serve as guardian ad litem for

---

[1] Plaintiff verified neither the Complaint nor the Amended Complaint. (See generally Docket Entries 1, 23.)

[Plaintiff]"[2] on the grounds that Plaintiff "is a mentally incapacitated adult" (Docket Entry 29 at 1 (emphasis omitted)). (See generally id. at 1-2.) According to the Motion, "Plaintiff's [C]ounsel has discussed this [M]otion with both [Plaintiff] and his caregiver, Julie Thompson [(at times, "Thompson")] ([Plaintiff's] grandmother), and they both consent and have received proper notice of the [M]otion." (Id.)

In support of the Motion, Plaintiff's Counsel submitted a "medical evaluation of [Plaintiff]." (Id. at 1.) The referenced evaluation, dated August 24, 2018, indicates that Plaintiff's Counsel referred Plaintiff to the evaluator "for an assessment of his current intellectual functioning." (Docket Entry 29-1 (the "Evaluation") at 1.) Conducted by a licensed psychologist, the Evaluation concludes:

> Currently, [Plaintiff] is performing in the Extremely Low range of intellectual functioning with significant impairments across all aptitude areas measured, including verbal and nonverbal abilities. At present, his current FSIQ score of 52 meets the clinical criteria for moderate intellectual disability (ICD-10 code F71). This diagnosis is significant and should play a role in determining appropriate placement and resources in both educational and occupational settings.

(Id. at 4.)

---

2 Alternatively, the Motion asks the Court to "appoint . . . some other fit and proper person to be the appointed guardian *ad litem* for [Plaintiff]." (Docket Entry 29 at 2.) [Citations herein to Docket Entry pages utilize the CM/ECF footer's pagination.]

2

Finally, the Motion states that "Rose is a duly licensed and practicing attorney with a principal place of business in Mecklenburg County and is fit and proper to serve in this capacity, and is prepared to act in the best interest of [] Plaintiff. Exhibit B is Mr. Rose's Acceptance of Appointment." (Docket Entry 29 at 1.) In turn, the referenced Acceptance of Appointment states only that Rose "accept[s] the foregoing appointment as Guardian Ad Litem for the above named mentally incapacitated adult and agree[s] to act faithfully and diligently in said capacity." (Docket Entry 29-2 at 1.)

The Motion provides no further details regarding Rose's qualifications to serve as a guardian ad litem, Plaintiff's alleged status as a "mentally incapacitated adult" (Docket Entry 29 at 1), or the propriety of appointing a guardian ad litem for Plaintiff under Rule 17. (See generally Docket Entry 29.) As such, the Court ordered Plaintiff's Counsel to file a memoranda explaining, inter alia, "how the Court should assess the request for appointment of a guardian ad litem for Plaintiff generally [and Rose's] suitability for that role in particular." (Text Order dated Oct. 10, 2019.) In response to the Court's order, Plaintiff's Counsel filed a memoranda (Docket Entry 56) (the "Supplement"), as well as supporting affidavits from Thompson (Docket Entry 56-2) and Rose (Docket Entry 56-3).

3

As relevant here, the Supplement asserts that the Motion's purpose "is only to protect [Plaintiff's] interest." (Docket Entry 56 at 5.) According to the Supplement, the Motion "is based on [] Defendants' reports of mental incapacity, [] Plaintiff's own report regarding [Plaintiff's] mental incapacity, as well as learning that Julia Thompson, [Plaintiff's] grandmother and caretaker, cannot properly serve as guardian *ad litem* due to her limitations. See Exhibit 2." (Id.) The Supplement elaborates:

> Attached hereto as Exhibit 2 is the Affidavit from Julia Thompson, whereby she affirms the limitations she has in caring for [] Plaintiff and also her travel and health limitations. Further, the collective Defendants, by their own intake and psychological testing of [Plaintiff], have confirmed his mental incapacity, and therefore Plaintiff's expert report from the 24th of August 2018 only supports or supplements Defendants' own evaluation of Plaintiff.

(Id. at 4 (citation omitted) (citing Docket Entry 23, ¶¶ 14-24).)

The Supplement additionally reports that Plaintiff "has not yet been adjudicated incompetent because his caretaker and grandmother, Julia Thompson, has not yet instituted that proceeding in state court." (Id.) It further notes that "Plaintiff is also not asking this Court to make a final determination on [Plaintiff's] competence. Instead, [] Plaintiff is only requesting that a guardian *ad litem* be appointed to add another layer of protection for [Plaintiff's] interests similar to *Fonner* [*v.*

4

*Fairfax County*, 415 F.3d 325 (4th Cir. 2005)]." (Docket Entry 56 at 4.)[3] Finally, the Supplement states:

> If [] Defendants desire to hire experts to contradict the prison records regarding [Plaintiff's] mental capacity, they certainly have a right to do so. However, Plaintiff has alleged that [Plaintiff] has the mental capacity of an 8-year-old, and consistent with Rule 17(c)(2) and *Fonner*, since he does not yet have a "duly appointed representative", Plaintiff is respectfully moving the Court to use its discretion and appoint one for [Plaintiff].

(Id. (citation omitted) (citing Docket Entry 23, ¶ 16).)

As to Rose's qualifications, the Supplement reports, in full:

> Rose is a licensed attorney in North Carolina and South Carolina, has been practicing for over eight years, and has successfully tried many complex litigation matters, and Plaintiff believes Rose would be a fit and proper person to serve over [Plaintiff's] interests. Attached hereto as Exhibit 3 is the Affidavit of Whitaker Rose.

---

[3] In the above-referenced decision, the district court dismissed from a lawsuit plaintiff William Fonner, a "mentally retarded man, who" (i) lived in a county group home, (ii) "became extremely anxious and began to cry when [his appointed guardian ad litem] discussed the pending lawsuit" with him, (iii) "did not understand what a 'lawsuit' is or what 'civil rights' are," and (iv) "clearly stated" to his appointed guardian ad litem that he "does not want to meet [his alleged lawyer]," Fonner, 415 F.3d at 331 (certain internal quotation marks omitted), "finding that he was not a willing participant in the litigation," id. at 328. On appeal, Fonner's putative lawyer "argue[d] that the district court was not authorized to appoint a guardian ad litem under [Rule] 17(c) absent a determination of incompetency by the [state]." Id. at 330. The United States Court of Appeals for the Fourth Circuit rejected that contention, "find[ing] it entirely appropriate that the district court, recognizing that Fonner suffered from some degree of mental retardation, appointed a guardian ad litem to assist the court in determining the propriety of Fonner's continued participation in the litigation." Id.

5

(Id. at 4-5.)  The referenced affidavit indicates that Rose, a North Carolina trial lawyer who "practices in the areas of complex litigation, which has included personal injury matters" (Docket Entry 56-3, ¶ 3), "ha[s] been asked to serve as Guardian Ad Litem for [Plaintiff]" and has reviewed the Amended Complaint and Evaluation (id., ¶ 4).  The affidavit further reflects that, "based on the information [Rose] ha[s] reviewed, [he] believe[s] it is important that [Plaintiff] have a fit and proper person appointed to represent his interests" (id., ¶ 5), and, if appointed guardian ad litem for Plaintiff, Rose "will use [his] experience and education in similar matters, to properly protect [Plaintiff's] interests in the pending litigation" (id., ¶ 6).

Should the Court deem Rose inappropriate, the Supplement alternatively "requests the Court to appoint a 'duly appointed representative' to serve [as guardian ad litem], and [states that] Plaintiff will defer to the Court's appointment."  (Docket Entry 56 at 5.)  Moreover, "[i]f the Court determines that it is unable to appoint a guardian due to the fact that [Plaintiff] has not been declared incompetent, Plaintiff respectfully requests that the Court allow Plaintiff the opportunity to go forward with [incompetency] adjudication proceedings [in state court]."  (Id.)  More specifically, under such circumstances, Plaintiff proposes a stay of the instant litigation "while Plaintiff files a petition for incompetency on behalf of [Plaintiff] in state court."  (Id.)

6

According to the Supplement, "[t]he stay of the federal case will not prejudice any of the parties, and it will be in furtherance of protecting [Plaintiff's] interests since he has the mental capacity of an 8-year-old child." (Id. at 5-6.)

Finally, according to Thompson's affidavit:

Thompson suffers from "no mental or physical disability." (Docket Entry 56-2, ¶ 1.) Plaintiff resides with Thompson (see id., ¶ 3), who "ha[s] been the primary caretaker of [Plaintiff] since [the ]day he was born" (id., ¶ 2). Plaintiff experienced "[d]ifficulty in school due to his disabilities (dropping out at age 16)" and also "[r]eceiv[ed] a significant head injury when he was 17-years-old." (Id., ¶ 4.) Plaintiff suffers from

> the following disabilities, which make it impossible for him to effectively communicate or comprehend certain matters: a. Paranoid schizophrenia; b. Developmental disorder; c. Extremely low IQ; d. He is unable to work or obtain work due to his inability to focus on small tasks; e. He is unable to manage his finances or protect himself from abuse.

(Id., ¶ 5.) Further, Plaintiff "still struggles with painfully traumatic memories and paranoia due to [being] rape[d]." (Id., ¶ 8.)

"[A]lthough [Thompson is] the primary caretaker of [Plaintiff], [she] cannot drive a vehicle more than 10 miles away from [her] residence (picking up grandchildren from school, getting groceries) due to poor and worsening eyesight caused by age, surgery and car accidents." (Id., ¶ 6.) "[A]s primary caretaker

7

of [Plaintiff], [Thompson] hired [Plaintiff's Counsel] to represent [her] grandson due to him being raped in prison." (Id., ¶ 7.) Thompson "ha[s] been informed that [Plaintiff] needs a separate attorney to protect his interests, and [Thompson] approve[s] the appointment of Whitaker Rose to act in that capacity." (Id., ¶ 9.)

Finally, "while [Thompson is] the caretaker of [Plaintiff], [her] own limitations prevent [her] from driving [Plaintiff] to [Plaintiff's Counsel's] office or anywhere outside of close to [her] home." (Id., ¶ 10.) Plaintiff's Counsel "has always had to come to [Thompson's] house in order to see [Plaintiff] in person." (Id., ¶ 11.) Thompson "genuinely fear[s] for [her] grandson's health each and every day, and [believes] that it is in the best interests of [Plaintiff] to have Whitaker Rose serve as his guardian ad litem." (Id., ¶ 12.)

## DISCUSSION

### I. Relevant Standards

Rule 17 provides:

> A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The [C]ourt must appoint a guardian ad litem — or issue another appropriate order — to protect a minor or <u>incompetent</u> person who is <u>unrepresented</u> in an action.

Fed. R. Civ. P. 17(c)(2) (emphasis added). "This Rule does not indicate the basis upon which a court determines the predicate fact that a party not already legally adjudicated to be so, is presently 'incompetent.'" Hudnall v. Sellner, 800 F.2d 377, 385 (4th Cir.

8

1986). Moreover, even for a litigant adjudicated incompetent, "the duty laid by Rule 17(c) upon the court [remains only] to appoint a guardian ad litem or to make available or take notice of the existence of other adequate means of protection, that is, to exercise an informed discretion in the matter." Id.; see also Powell v. Symons, 680 F.3d 301, 303 (3d Cir. 2012) (explaining that, despite its mandatory language, Rule 17 contains "no suggestion which factors should trigger the district court's duty of inquiry as to whether the individual at issue is incompetent," and, "[a]s a result, responsibility for Rule 17 appears generally to be left to the discretion of the district courts"); Michelson v. Duncan, No. 1:17cv50, 2018 WL 4474661, at *6 (W.D.N.C. Sept. 18, 2018) ("A court is required to take whatever measures it deems proper to protect an incompetent person during litigation, including the appointment of a guardian *ad litem* or next friend. The court has broad discretion and need not appoint a guardian *ad litem* if the person is or can otherwise be adequately protected, but is under a legal obligation to consider whether the person is adequately protected." (citation omitted)), reconsideration denied, No. 1:17cv50, 2018 WL 4620618 (W.D.N.C. Sept. 26, 2018), and appeal dismissed sub nom. Michelson v. Coon, 754 F. App'x 226 (4th Cir. 2019), and reconsideration denied, No. 1:17cv50, 2019 WL 2366445 (W.D.N.C. June 3, 2019).

In other words, although "Rule 17(c)(2) allows the court to appoint a guardian ad litem, it does not compel it to do so, but rather grants it considerable discretion to issue an 'appropriate order' to protect the interest of an <u>unrepresented incompetent</u> litigant."  <u>Lanahan v. Clifton T. Pirkins Hosp. Ctr.</u>, No. CV 16-821, 2017 WL 3668751, at *2 (D. Md. Aug. 23, 2017) (emphasis added).  As the United States Court of Appeals for the Fourth Circuit has explained:

> What [Rule 17(c)(2)] undoubtedly contemplates is that form of mental deficiency which — whether or not accompanied by other forms of personality disorder — affects the person's practical ability "to manage his or her own affairs."  This is the general test applied by the civil law for making adjudications of "incompetency" for a variety of purposes.  It is the test in [the state where the relevant litigant lived].  *See* Md. Est. & Trusts Code Ann. § 13-201(c)(1) ("unable to manage his property and affairs effectively because of . . . mental disability . . .").  It is the test [the Fourth Circuit] ha[s] applied to determine whether a party was "incompetent" to defend without representation in civil litigation.  *See Beckley National Bank* [*v. Boone*], 115 F.2d [513,] 517-19 [(4th Cir. 1940)] ("test is the ability to know the nature, character and effect of one's acts, and to understand the subject matter of business transactions").  In common experience, there is of course no necessary relationship between "mental incompetence" in this special sense and various forms of mental derangement or personality disorder that may cause utterly bizarre and destructive conduct in litigation as in other realms.

<u>Hudnall</u>, 800 F.2d at 385.

Consistent with the foregoing quotation, courts look to state law to determine a litigant's competency under Rule 17.  <u>See</u> <u>Lanahan</u>, 2017 WL 3668751, at *2 ("[Rule] 17(b)[] provides, in

10

pertinent part, that a determination regarding the capacity to sue or be sued is controlled by the law of the party's state of domicile."); Fed. R. Civ. P. 17(b)(1) ("Capacity to sue or be sued is determined . . . for an individual who is not acting in a representative capacity, by the law of the individual's domicile[.]").  As relevant here (see Docket Entry 56-2, ¶ 3), North Carolina defines an "[i]ncompetent adult" as an adult "who lacks sufficient capacity to manage the adult's own affairs or to make or communicate important decisions concerning the adult's person, family, or property whether the lack of capacity is due to mental illness, intellectual disability, epilepsy, cerebral palsy, autism, inebriety, senility, disease, injury, or similar cause or condition."  N.C. Gen. Stat. § 35A-1101(7).  To adjudicate an individual incompetent, "the finder of fact" in a state court incompetency adjudication must "find[] by clear, cogent, and convincing evidence that the [individual] is incompetent."  N.C. Gen. Stat. § 35A-1112(d).

To aid in this assessment, a "multidisciplinary evaluation may be considered at the hearing for adjudication of incompetence."  N.C. Gen. Stat. § 35A-1111(e).  A multidisciplinary evaluation

> contains current medical, psychological, and social work evaluations as directed by the clerk and . . . may include current evaluations by professionals in other disciplines, including without limitation education, vocational rehabilitation, occupational therapy, vocational therapy, psychiatry, speech-and-hearing, and communications disorders.  The evaluation is current if made not more than one year from the date on which it is

11

> presented to or considered by the court. The evaluation
> shall set forth the nature and extent of the disability
> and recommend a guardianship plan and program.

N.C. Gen. Stat. § 35A-1101(14).

According to the North Carolina Supreme Court, although "there are varying degrees of mental inadequacy, the law will not (and should not) deprive a person of the control of his lawsuit or his property unless he is 'incompetent from want of understanding to manage his own affairs.'" Hagins v. Redevelopment Comm'n of Greensboro, 275 N.C. 90, 104, 165 S.E.2d 490, 499 (1969). The North Carolina Supreme Court "understand[s] the word Affairs to encompass a person's entire property and business" and recognizes that "[i]ncompetency to administer one's property obviously depends upon the general frame and habit of mind." Id. (internal quotation marks omitted). As such, "to authorize the appointment of next friend or guardian ad litem, it is not enough to show that another might manage a man's property more wisely or efficiently than he himself." Id. at 105, 165 S.E.2d at 500. Put another way, "no man shall be interfered with in his personal or property rights by the government, under the exercise of its parental authority, until the actual and positive necessity therefor is shown to exist." Id. (internal quotation marks omitted). Finally, although the North Carolina Supreme Court "ha[s] found no completely satisfactory definition of the phrase 'incompetent from want of understanding to manage his own affairs' . . . ., mere weakness of mind will not be

12

sufficient to put a person among those who are incompetent to manage their own affairs." Id.

## II. Analysis

At present, the evidence[4] before the Court reflects:

Plaintiff suffers from an "[e]xtremely low IQ," "[p]aranoid schizophrenia," and an unspecified "[d]evelopmental disorder" (Docket Entry 56-2, ¶ 5), as well as paranoia and traumatic memories (id., ¶ 8). He dropped out of school at age 16, after experiencing "[d]ifficulty in school due to his disabilities," and additionally experienced "a significant head injury" (id., ¶ 4) approximately fourteen years ago (see id., ¶¶ 2, 4), the continuing impact of which remains unclear (see id., ¶ 4). Thompson, who has served as Plaintiff's primary caretaker since his birth 31 years ago (see id., ¶ 2), reports that his disabilities "make it impossible for him to effectively communicate or comprehend certain matters." (Id., ¶ 5.) She further avers that Plaintiff "is unable

---

4 In moving for Rose's appointment as Plaintiff's guardian ad litem, the Motion and Supplement rely on various unverified factual allegations. (See, e.g., Docket Entry 56 at 4, 6 (asserting that "Defendants, by their own intake and psychological testing of [Plaintiff], have confirmed his mental incapacity," as well as that "[Plaintiff] has the mental capacity of an 8-year-old child").) However, unsworn assertions, whether in a complaint or a memoranda, do not constitute admissible evidence. See, e.g., Dillon v. BMO Harris Bank, N.A., No. 1:13cv897, 2014 WL 911950, at *2 (M.D.N.C. Mar. 10, 2014) ("Statements in briefs are not evidence . . . .") (collecting cases); Reeves v. Hubbard, No. 1:08cv721, 2011 WL 4499099, at *5 n.14 (M.D.N.C. Sept. 27, 2011) (explaining that, unless "sworn or made under penalty of perjury," factual allegations in court filings "do not constitute evidence"), recommendation adopted, slip op. (M.D.N.C. Nov. 21, 2011).

13

to work or obtain work due to his inability to focus on small tasks," as well as that "[h]e is unable to manage his finances or protect himself from abuse." (Id.)

Additionally, a licensed psychologist concluded that, two years ago, Plaintiff "[wa]s performing in the Extremely Low range of intellectual functioning with significant impairments across all aptitude areas measured" and, at that point, he met "the clinical criteria for moderate intellectual disability." (Docket Entry 29-1 at 4.) Per the psychologist, hired to evaluate Plaintiff's "current intellectual functioning" (id. at 1), that diagnosis qualified as "significant and should play a role in determining appropriate placement and resources in both educational and occupational settings" (id. at 4).

However, the Evaluation never opines about Plaintiff's legal competency. (See generally Docket Entry 29-1.) In addition, the Evaluation does not constitute a multidisciplinary evaluation under North Carolina law, see N.C. Gen. Stat. § 35A-1101(14), and it already had become outdated under North Carolina law, see N.C. Gen. Stat. § 35A-1101(14), when presented to the Court (see Docket Entry 29 at 2; Docket Entry 29-1 at 1). In any event, a low IQ or other mental disability does not, by itself, suffice to establish incompetency. See, e.g., Matter of Z.V.A., 373 N.C. 207, 209-11, 835 S.E.2d 425, 428-29 (2019) (rejecting "argu[ment] that the district court abused its discretion by failing to address whether"

14

a litigant with an "approximate IQ of 64" "required a guardian *ad litem*"); Hagins, 275 N.C. at 105, 165 S.E.2d at 500 ("[M]ere weakness of mind will not be sufficient to put a person among those who are incompetent to manage their own affairs.").

Moreover, the record confirms Plaintiff's recent prior criminal incarceration. (See Docket Entry 56-2, ¶ 7 (averring that Plaintiff was "raped in prison").)[5] North Carolina law permits criminal conviction and imprisonment of only competent individuals. See, e.g., State v. Minyard, 231 N.C. App. 605, 622, 753 S.E.2d 176, 188 (2014) (explaining that, under North Carolina law, "[n]o person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner" (internal quotation marks omitted)). The Motion further represents that Plaintiff's Counsel discussed the Motion with Plaintiff, who consented to it. (See Docket Entry 29 at 1-2.) Such behavior militates against a finding of incompetency, as it reflects an ability to both "manage [Plaintiff's] own affairs" and "make [and] communicate important decisions concerning [Plaintiff's] person . . . [and] property," N.C. Gen. Stat. § 35A-1101(7).

---

5 Indeed, the Amended Complaint indicates that Plaintiff has "been incarcerated" with the NCDPS on three separate occasions. (Docket Entry 23, ¶ 17.)

Accordingly, given the limited, dated, and contradictory nature of the current record, the Court finds that Plaintiff's Counsel has not established Plaintiff's incompetency within the meaning of Rule 17. See Hagins, 275 N.C. at 105, 165 S.E.2d at 500 ("[N]o man shall be interfered with in his personal or property rights by the government, under the exercise of its parental authority, until the actual and positive necessity therefor is shown to exist." (internal quotation marks omitted)). Plaintiff's Counsel suggests, however, that the Court need not find Plaintiff incompetent to appoint a guardian ad litem under Rule 17. (See Docket Entry 56 at 4 ("Plaintiff is also not asking this Court to make a final determination on [Plaintiff's] competence. Instead, [he] is only requesting that a guardian *ad litem* be appointed to add another layer of protection for [his] interests similar to *Fonner*.").) To the extent the Court possesses such authority, see, e.g., Johnson v. City of Fayetteville, No. 5:12cv456, 2014 WL 3738310, at \*7 (E.D.N.C. July 29, 2014) ("[T]he court recognizes that [a plaintiff] suffers from some degree of mental infirmity [a]ffecting her ability to participate in this litigation. Accordingly, in its discretion, the court finds it appropriate to appoint a guardian *ad litem* to assist the court in [the plaintiff's] continued participation in this litigation."), the Court declines to exercise it on the current record.

16

In this regard, it bears emphasis that, unlike in circumstances where a litigant's pro se status may counsel appointment of a guardian ad litem, Plaintiff does not operate pro se. See generally Hudnall, 800 F.2d at 386 (noting that, although defendant likely did not qualify as incompetent, "in hindsight, it may have been a better exercise of discretion, particularly in view of [defendant's] pro se appearance, to have appointed a guardian ad litem out of an abundance of caution"); Westcott v. United States Fid. & Guar. Co., 158 F.2d 20, 22 (4th Cir. 1946) (rejecting challenge to district court's refusal to appoint guardian ad litem under Rule 17 for minor represented by counsel). Instead, Plaintiff's grandmother hired Plaintiff's Counsel to represent Plaintiff in this action. (See Docket Entry 56-2, ¶ 7.) Moreover, the record reflects that Plaintiff's grandmother, his lifelong caretaker (see id., ¶ 2), remains involved in the prosecution of Plaintiff's case. (See, e.g., Docket Entry 29 at 1-2 ("Plaintiff's [C]ounsel has discussed th[e M]otion with both [Plaintiff] and his caregiver, Julie Thompson ([Plaintiff's] grandmother), and they both consent . . . ."); Docket Entry 56-2, ¶ 9 ("[Thompson] ha[s] been informed that [Plaintiff] needs a separate attorney to protect his interests, and [Thompson] approve[s] the appointment of Whitaker Rose to act in that capacity.").)[6]

---

6 Notwithstanding Thompson's averment that she "ha[s] been informed that [Plaintiff] needs a separate attorney to protect his interests" (Docket Entry 56-2, ¶ 9), individuals other than
(continued...)

17

In addition, although the Supplement asserts that "Thompson, [Plaintiff's] grandmother and caretaker, cannot properly serve as guardian *ad litem* due to her limitations" (Docket Entry 56 at 5 (citing Docket Entry 56-2)), Thompson's affidavit does not describe any limitations that would prevent her from assisting Plaintiff (whether designated as a guardian ad litem or not); to the contrary, that affidavit indicates only that, due to poor eyesight, Thompson cannot drive more than ten miles from her residence (Docket Entry 56-2, ¶ 6), which prevents her from driving Plaintiff to the office of Plaintiff's Counsel (see id., ¶ 10). The affidavit discloses no other limitations (see generally id., ¶¶ 1-12), and, in fact, affirmatively avers that Thompson suffers from "no mental or physical disability" (id., ¶ 1). As such, the record supports the conclusion that Plaintiff may call upon at least one family member willing and able to aid him in prosecuting his claims even absent formal designation as a guardian ad litem.

Under the circumstances, the Court finds that Plaintiff "is adequately protected" without appointment of a guardian ad litem, Michelson, 2018 WL 4474661, at *6. See Hudnall, 800 F.2d at 385

---

6(...continued)
attorneys can serve as guardians ad litem, see, e.g., Johnson, 2014 WL 3738310, at *6-7 (appointing litigant's child as her guardian ad litem); United States v. Ruger, Model 223 Mini Rifle, Serial No. 18492495, No. 1:09cv197, 2009 WL 2591145, at *3 (W.D.N.C. Aug. 19, 2009) ("Th[e guardian ad litem role] has, since common law, been filled by qualified non-lawyers who otherwise have no interest in the litigation.").

18

(explaining that Rule 17 imposes only a duty either "to appoint a guardian ad litem or to make available or <u>take notice of the existence of other adequate means of protection</u>" (emphasis added)).[7] The Court will therefore deny the Motion, but without prejudice to renewal of the request for appointment of a guardian ad litem should Plaintiff's situation evolve in a manner that warrants such relief.

## CONCLUSION

The record does not establish Plaintiff's incompetency. Further, the record shows that Plaintiff remains adequately protected without appointment of a guardian ad litem at this time.

**IT IS THEREFORE ORDERED** that the Motion (Docket Entry 29) is **DENIED WITHOUT PREJUDICE** to renewal of the request for appointment of a guardian ad litem based on changed circumstances.

This 14th day of September, 2020.

                                          /s/ L. Patrick Auld
                                            **L. Patrick Auld**
                              **United States Magistrate Judge**

---

7 Given this determination, the Court declines the alternate request by Plaintiff's Counsel to stay the federal litigation pending possible incompetency proceedings in state court.