# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOSHUA NICHOLSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19cv585 |
| | ) | |
| JULIE ZIMMERMAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the Court on "Plaintiff's Motion for Default Judgment as to Worldwide Staffing Resources, Inc." (Docket Entry 64) (the "Motion"). For the reasons that follow, the Court should deny the Motion.

## PROCEDURAL BACKGROUND

Alleging violations of his constitutional and statutory rights during his incarceration with the North Carolina Department of Public Safety (the "NCDPS") in the summer of 2016, Joshua Nicholson (the "Plaintiff") initiated a lawsuit against various defendants, including Robin Caison ("Caison") and Worldwide Staffing Resources, Inc. ("Worldwide," and collectively with Caison, the "Worldwide Defendants") (Docket Entry 1 (the "Complaint"), ¶¶ 6-7). (See generally Docket Entry 1.) After certain defendants moved to dismiss the Complaint, Plaintiff filed an amended complaint (see Docket Entry 23) (the "Amended Complaint"), which largely reiterated the Complaint's allegations (compare Docket Entry 1,

with Docket Entry 23). Plaintiff thereafter filed an affidavit of service, indicating that Plaintiff served Worldwide with the Amended Complaint through the North Carolina Secretary of State. (See Docket Entry 30 at 1-2.) Plaintiff subsequently moved for entry of default against Worldwide (see Docket Entry 58), which the Clerk granted (see Docket Entry 59). Plaintiff then dismissed Caison from the lawsuit (see Docket Entry 63), and has now moved for entry of default judgment against Worldwide (see Docket Entry 64). Specifically, Plaintiff seeks "a judgment on all of his claims against Worldwide in the amount of $1,000,000.00, or in the alternative, . . . a hearing to determine the measure of damages." (Id. at 1.)

## DISCUSSION

### I. Default Judgment Standards

As this Court (per Chief United States District Judge Thomas D. Schroeder) recently explained:

> A clerk's entry of default does not entitle a party to default judgment as a matter of right. Even where a motion for default judgment is unopposed, the [C]ourt must exercise sound judicial discretion to determine whether default judgment should be entered.
>
> Default is not considered an absolute confession by the defendant of his liability and of the plaintiff's right to recover. Rather, a defaulted defendant is considered to have admitted the factual allegations — but not the conclusions of law — contained in the complaint. Ultimately, the [C]ourt must determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action.

2

> In order to impose default judgment, the moving party must first show that the defaulted party was properly served. Second, the [C]ourt must evaluate the complaint to ensure that it states a legitimate cause of action. If the [C]ourt determines that liability is established, the [C]ourt must then determine the appropriate amount of damages. The [C]ourt does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations.

Superior Performers, Inc. v. Thornton, No. 1:20-cv-123, 2020 WL 6060978, at *4-5 (M.D.N.C. Oct. 14, 2020) (certain brackets in original) (internal quotation marks and citations omitted).

Moreover, where "the well-pleaded factual allegations in [the c]omplaint do not support the relief sought in this action," the Court "need not determine whether [the p]laintiff[] ha[s] met the other requirements for entry of default judgment." Victoria Select Ins. Co. v. R&G Transp., No. 3:16cv624, 2017 WL 5158684, at *4 (E.D. Va. Sept. 7, 2017). Instead, in that circumstance, the Court "must dismiss the [claims against the pertinent defendant] for failure to state a claim upon which relief can be granted." Id.

## II. Plaintiff's Allegation

This action arises from Plaintiff's alleged sexual assault by his cellmate at "Mountain View" (Docket Entry 23, ¶ 22)[1] in August 2016. (See id., ¶¶ 13-39.) Asserting claims under 42 U.S.C. § 1983 (id. at 14), 42 U.S.C. § 1985 (id. at 15), and 42 U.S.C.

---

1 Presumably, Mountain View Correctional Institution. See https://www.ncdps.gov/adult-corrections/prisons/prison-facilities (last visited Feb. 22, 2021).

§ 12101 (id. at 17), Plaintiff sued Worldwide and its alleged employee Caison; Maxim Healthcare Services, Inc. ("Maxim") and its alleged employee "Stacy Bowen" ("Bowen"); and various (known and unknown) NCDPS employees. (Id., ¶¶ 2-10.) As relevant here, the Amended Complaint alleges:

Plaintiff suffers from various mental issues and "present[s] the same cognitive ability as an 8-year-old child" (id., ¶ 16). (See, e.g., id., ¶¶ 14-16.) On June 14, 2016, Nurse Glover at Piedmont Correctional Institution ("Piedmont") performed a health screening on Plaintiff, which identified the following issues: "(a) history of inpatient mental health treatment (1-3 times), (b) a current mental health complaint, (c) treatment for depression, including antipsychotic prescription Risperdal, Valium and Cogentin, (d) and a note from [his] mother stating [Plaintiff] was schizophrenic." (Id., ¶ 14.) On or about June 16, 2016, Julie Zimmerman ("Zimmerman"), a defendant in this action (see id., ¶ 2), conducted a mental health assessment on Plaintiff. (See id., ¶ 15.) Zimmerman's notes from this assessment reflect, inter alia, that "[Plaintiff] reported that he had a psychiatric admission at CaroMont in Gastonia shortly before his jail admission" (id.) and "that [Plaintiff] required inpatient admission both times he had previously been incarcerated, yet [Zimmerman] inexplicably recommended outpatient treatment for this incarceration term" (id., ¶ 17). Between June 16, 2016, and June 21, 2016, Plaintiff took

4

two IQ tests, which returned scores of 63 and 67. (Id., ¶ 20.) "It is believed that Mountain View had received Piedmont's IQ test results prior to [Plaintiff's] transfer" to Mountain View (id., ¶ 22), which apparently occurred on June 21, 2016 (see id., ¶¶ 19, 23.)

"On or about June 21, 2016," Joseph Williams ("Williams"), another defendant in this action (see id., ¶ 9), conducted an outpatient examination (via telepsychiatry) on Plaintiff at Piedmont, during which Williams, inter alia, "fail[ed] to thoroughly discuss the inpatient treatments [Plaintiff] received." (Id., ¶ 19.) The final plan from this exam "[wa]s for [Plaintiff] to return in 6-8 weeks." (Id.) Also "[o]n June 21, 2016, an Intake health screen was conducted by Caison, who listed 'outpatient only' as the history of mental health treatment. She stated that there was current mental health treatment but no mental health complaint." (Id., ¶ 23.)[2]

The Amended Complaint then details various events on June 28, 2016 (id., ¶ 24), August 12, 2016 (id., ¶ 25), and August 15, 2016, through August 22, 2016 (id., ¶¶ 26-39), none of which involve Caison, Worldwide, or the Mountain View intake health screen (see id., ¶¶ 24-39). According to the Amended Complaint, Plaintiff's

---

2 In the records for a "health screen" at Piedmont on June 6, 2016, "inpatient treatment was listed, but current mental health treatment/complaint was marked 'no,' and there were no other mental health notes at this appointment." (Id., ¶ 21.)

5

Mountain View cellmate "raped and assaulted" him around August 12, 2016.  (Id., ¶ 25.)

Although the reference to Caison's health intake screening constitutes the only allegation regarding Caison or Worldwide in its "Factual Allegations" section (id. at 5 (emphasis and all-cap font omitted)), the Amended Complaint mentions Caison and/or Worldwide in two additional sections.  First, in the "Parties" section (id. at 1 (emphasis and all-cap font omitted)), the Amended Complaint states:

> Defendant Worldwide Staffing Resources, Inc. ("Worldwide") contracted with NCDPS to perform essential state functions with regard to the prison system and as to [] Plaintiff, and at all relevant times, was responsible for ensuring that [] Plaintiff was safe and receiving adequate care and treatment in accordance with applicable legal standards.  The rights violations at issue in this case were carried out by Worldwide final policymakers, and established Worldwide policies and practices were a driving force behind the rights violations at issue in this case.
>
> Defendant Robin Caison, sued in her individual and official capacity, is a citizen and resident of the State of North Carolina and was at relevant times acting in the course and scope of her employment with Worldwide, and under color of state law.  Caison is sued in her individual and official capacity.

(Id., ¶¶ 7-8 (internal paragraph numbering omitted).)

Second, in its "First Cause of Action" section outlining its Section 1983 claim (id. at 14 (emphasis and all-cap font omitted)), the Amended Complaint asserts:  "As to Maxim and Worldwide, the constitutional violations described herein involved execution of the entities' official policies and custom.  These policies and

6

customs were the moving force behind the constitutional violations. [] Plaintiff specifically does not allege that Maxim and Worldwide are liable merely via *respondeat superior*." (Id., ¶ 54.)

In addition, in detailing its causes of action, the Amended Complaint also lodges certain allegations against "Defendants." (See id., ¶¶ 49-77.) In particular, the Amended Complaint alleges:

"At the time of the incidents at issue, [] Plaintiff had clearly established rights under the United States Constitution[]" to, inter alia, "be free from cruel and unusual punishment," including "deliberate indifference to [either] a substantial risk of serious harm" or his "medical needs." (Id., ¶ 50.) "Defendants violated these clearly established rights in the ways described in summary form herein, and in ways that will be uncovered in discovery and at trial." (Id., ¶ 51.) "The unconstitutional misconduct described herein was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiff's clearly established constitutional rights." (Id., ¶ 52.) "As a direct and proximate result of the above constitutional violations, [] Plaintiff suffered serious physical and emotional injury." (Id., ¶ 53.)

"Defendants each had personal involvement in the wrongs enumerated in this Complaint in which they are named, through personal direction and/or actual knowledge and acquiescence as described herein." (Id., ¶ 56.) "All of the Defendants conspired

7

with one another to deprive Plaintiff of his health, well-being and peace of mind." (Id., ¶ 57.)

According to the Amended Complaint:

[This] conspiracy included, but was not limited to:

> a. Conspiracy to violate the Eighth and Fourteenth Amendment Rights of Plaintiff in violation of the Civil Rights Act, Title 42 U.S.C. § 1985;
>
> b. Conspiracy to deprive Plaintiff of his physical, mental, and emotional health;
>
> c. Conspiracy to harm Plaintiff as indicated earlier in this Complaint;
>
> d. Conspiracy to cover-up the sexual abuse and assaults of Plaintiff's cellmate.

Upon information and belief, all of the Defendants had various incentives to participate in the conspiracy. For example, all of the Defendants and their employees are incentivized to carry out medical visits as quickly as possible. For the contractors and their employees, the quicker the medical visits are carried out, the more profitable for the contractors. For NCDPS and their employees, there are specific metrics in place to gauge how many medical visits and sick call requests and grievances are closed out. There is no mechanism in place within NCDPS for inmates to challenge the adequacy of medical care provided, so the only incentive [D]efendants have is to complete medical appointments as quickly as possible, and to close sick calls and grievances as quickly as possible. Due to this and other reasons, [] Defendants acted in concert to coverup [sic] the assaults on [] Plaintiff.

The above acts were committed by all of the Defendants, acting under the color of state law and authority and violated clearly established statutory or constitutional rights of Plaintiff of which a reasonable person would have known.

(Id., ¶¶ 57-59 (internal paragraph numbering omitted); see also id., ¶ 64 ("As a direct and proximate result of Defendants'

8

conspiracy to harm and/or cover-up such harm and/or deliberate indifference and/or failure to protect Plaintiff, [Plaintiff] suffered severe and permanent emotional distress and mental anguish together with a total deprivation of his rights guaranteed by the Constitution of the United States of America.").)

Finally, the Amended Complaint states:

"Defendants have discriminated against Plaintiff, by excluding him from participation in, or denying him the benefits of, programs, activities and services for which Plaintiff is qualified, or for which he would be qualified with reasonable accommodation to his disability," in violation of Title II of the Americans with Disabilities Act (the "ADA"). (Id., ¶ 69; see also id., ¶¶ 66, 68, 71.) "On information and belief, Defendants failed to provide effective communication or provide comparable access to services, benefits, activities, programs, or privileges, policies, regular practices, and/or customs" (id., ¶ 73), in violation of certain ADA regulations (see id., ¶¶ 71-72). Accordingly:

> As a proximate result of Defendants' violation of Plaintiff's rights under the ADA, Plaintiff has suffered from discrimination, unequal treatment, exclusion (including exclusion from Defendants' services, benefits, activities, programs, and privileges), violations of his rights under the laws of the United States, loss of dignity, frustration, humiliation, mental anguish, depression, suicidal thoughts, emotional pain and suffering, anxiety, trauma, embarrassment, and medical expenses that have been incurred and will be incurred in the future.

(Id., ¶ 74.)

### III. Analysis

Although Plaintiff's Memorandum in Support of the Motion contends that his allegations "support §1983, §1985, and [ADA] claims against Worldwide" (Docket Entry 65 at 3), it does not address his Section 1985 and ADA claims in arguing for entry of default judgment (see id. at 3-4). In any event, the Amended Complaint fails to state viable Section 1985 and ADA claims against Worldwide, thereby precluding entry of default judgment on those claims, see, e.g., Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780–81 (4th Cir. 2001).

Pursuant to Section 1985,

> [i]f two or more persons . . . conspire . . ., for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). Furthermore:

> The law is well settled that to establish a sufficient cause of action for "conspiracy to deny equal protection of the laws" under section 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

10

Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995).  Here, rather than asserting "a specific class-based, invidiously discriminatory animus," id., the Amended Complaint alleges that financial considerations motivated Worldwide Defendants' actions (see Docket Entry 23, ¶ 58 ("Defendants and their employees are incentivized to carry out medical visits as quickly as possible.  For the contractors and their employees, the quicker the medical visits are carried out, the more profitable for the contractors. . . . Due to this and other reasons, [] Defendants acted in concert to coverup [sic] the assaults on [] Plaintiff.")).  Accordingly, the Amended Complaint's allegations cannot sustain a Section 1985 claim against Worldwide.

In turn, Title II provides that, "[s]ubject to the provisions of [Subchapter II of the ADA], no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132 (emphasis added).  As relevant here, the ADA defines "public entity" as "any State or local government," or "any department, agency, special purpose district, or other instrumentality of a State or States or local government."  42 U.S.C. § 12131(1)(A)-(B) (internal quotation marks omitted).  "By its plain language, this definition 'does not include private individuals or private entities,'" Wright v.

11

Carroll Cty. Bd. of Educ., No. 11cv3103, 2013 WL 4525309, at *19 (D. Md. Aug. 26, 2013) (collecting cases), such as Worldwide Defendants (see Docket Entry 23, ¶¶ 7-8). See, e.g., City & Cty. of S.F. v. Sheehan, 575 U.S. 600, __, 135 S. Ct. 1765, 1773 (2015) ("Only public entities are subject to Title II . . . ."); Smith v. Glanz, 662 F. App'x 595, 597 (10th Cir. 2016) (explaining that "only public entities, and not individual public employees, . . . may be held liable under the ADA" and that "no individual . . . may be held liable under Title II of the ADA"). The fact that, per the Amended Complaint, Worldwide "contracted with NCDPS to perform essential state functions with regard to the prison system and as to [] Plaintiff" (Docket Entry 23, ¶ 7), does not change this reality. See, e.g., Edison v. Douberly, 604 F.3d 1307, 1310 (11th Cir. 2010) ("A private contractor does not . . . become liable under Title II [of the ADA] merely by contracting with the State to provide governmental services, essential or otherwise."); Wright, 2013 WL 4525309, at *19-20 (finding Title II inapplicable to actions of private parties and collecting cases). Accordingly, Plaintiff's Title II claim against Worldwide fails as a matter of law.

The Amended Complaint's "well-pleaded allegations of fact," Ryan, 253 F.3d at 780 (internal quotation marks omitted), likewise fail to state a viable Section 1983 claim against Worldwide. In that regard, the Memorandum in Support of the Motion asserts that

12

> Worldwide violated Plaintiff's clearly established Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment; to be free from deliberate indifference to a substantial risk of serious harm; to be free from state created danger; to bodily integrity; and to adequate medical care and to be free from deliberate indifference to medical needs.

(Docket Entry 65 at 4 (citing Docket Entry 23, ¶ 50).)

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). However, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

As such,

> [a]n inmate's Eighth Amendment claim involves a subjective component and an objective component. "Specifically, Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be

13

called "punishment," and absent severity, such punishment cannot be called "cruel and unusual."

Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citation omitted).

Thus, "[t]he question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" Farmer, 511 U.S. at 843. "To prove deliberate indifference, plaintiffs must show that 'the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) (brackets in original) (quoting Farmer, 511 U.S. at 837); see also id. ("Put differently, the plaintiff must show that the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . dr[ew] th[at] inference.'" (brackets, emphasis, and ellipsis in original)). In the medical context, these elements of an eighth-amendment claim require a plaintiff to establish that the defendants "acted with 'deliberate indifference' (subjective) to [his] 'serious medical needs' (objective)." Iko, 535 F.3d at 241.[3] A defendant displays deliberate indifference where he possesses "*actual knowledge of the risk of harm* to [an] inmate" and "*also* . . . recognize[s] that *his*

---

[3] A medical need qualifies as serious if it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (internal quotation marks omitted).

14

*actions [a]re insufficient* to mitigate the risk of harm to the inmate arising from his medical needs." Id. (emphasis in original) (internal quotation marks omitted).

"[D]eliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. "It requires that a [defendant] actually know of and disregard an objectively serious condition, medical need, or risk of harm." De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (internal quotation marks omitted). A plaintiff can satisfy this standard by showing "that a [defendant] knew of a substantial risk from the very fact that the risk was obvious." Scinto, 841 F.3d at 226 (internal quotation marks omitted).

A plaintiff can also establish "a prima facie case of deliberate indifference" where "'a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . had been exposed to information concerning the risk and thus must have known about it.'" Id. (brackets and ellipsis in original) (quoting Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004)). In addition, "'[f]ailure to respond to an inmate's known medical needs

15

raises an inference [of] deliberate indifference to those needs.'" Id. (brackets in original).

Here, the only allegation in the Amended Complaint specific to Worldwide Defendants and their interactions with Plaintiff states, in full: "On June 21, 2016, an Intake health screen was conducted by Caison, who listed 'outpatient only' as the history of mental health treatment. She stated that there was current mental health treatment but no mental health complaint." (Docket Entry 23, ¶ 23.) This allegation fails to establish that Caison "knew of and disregarded an[y] excessive risk to [Plaintiff's] health or safety," Scinto, 841 F.3d at 225 (internal quotation marks and brackets omitted), let alone a risk that Plaintiff would be "brutally sexually assaulted" (Docket Entry 65 at 1) several weeks later (see Docket Entry 23, ¶¶ 23-39). Thus, the Amended Complaint fails to allege a plausible Section 1983 claim against Caison. Further, notwithstanding the assertion that it "does not allege that . . . Worldwide [is] liable merely via *respondeat superior*" (id., ¶ 54), the Amended Complaint contains no independent allegations of wrongful conduct by Worldwide regarding Plaintiff; instead, any claim against Worldwide rests on Caison's conduct. (See generally Docket Entry 23.) Thus, because the Amended Complaint fails to state a Section 1983 claim against Caison, it likewise fails to state a Section 1983 claim against Worldwide.

16

In sum, "Plaintiff['s Amended] Complaint does not contain sufficient factual matter to state a claim for the relief Plaintiff[] request[s]." Victoria Select, 2017 WL 5158684, at *5. The Court should therefore deny the Motion. See id.; accord Superior Performers, 2020 WL 6060978, at *7. Moreover, because Plaintiff fails to allege viable claims against Worldwide, the Court should dismiss Worldwide from this action. See Victoria Select, 2017 WL 5158684, at *5; see also Eriline Co. S.A. v. Johnson, 440 F.3d 648, 655 n.10 (4th Cir. 2006) ("Where the face of a complaint plainly fails to state a claim for relief, a district court has no discretion but to dismiss it." (internal quotation marks omitted)).

## CONCLUSION

The Amended Complaint does not state Section 1983, Section 1985, or ADA claims against Worldwide.

**IT IS THEREFORE RECOMMENDED** that the Motion (Docket Entry 64) be denied and Plaintiff's claims against Worldwide be dismissed without prejudice.

This 22nd day of February, 2021.

                                      /s/ L. Patrick Auld
                                         **L. Patrick Auld**
                             **United States Magistrate Judge**